# ROCKINGHAM,

## JULY TERM, A. D. 1844.

15 227
68 439
15 227
72 23

### KITTREDGE *vs.* EMERSON.

In alleging an attachment of property, in a replication to a plea of discharge in bankruptcy, it is not necessary to set forth the delivery of the summons; and if it be alleged that a summons was delivered, on a day before the writ was sued out, it may be rejected as repugnant, and surplusage.

The delivery of the summons, in the service of a writ of attachment, is not a part of the attachment itself, which is to be made before the summons is delivered. The delivery of the summons is necessary to complete the service of the writ, and to require the defendant to answer to the action.

Defects in the service of the writ are cured by a general appearance and a plea to the merits.

The court is bound to give such judgment as appears upon the whole record to be proper, without regard to any imperfection in the prayer of judgment.

The doctrine of *Kittredge* vs. *Warren*, decided on the last circuit, reëxamined, and affirmed. That doctrine is that—

" An attachment of property on mesne process, *bonâ fide* made, before any act of bankruptcy, or petition by the debtor, is a lien or security upon property, valid by the laws of this State; and thus within the proviso of the second section of the bankrupt act of August 19, 1841.

" The attachment being saved by the proviso, the means of making it effectual are also saved; and the certificate of discharge of the bankrupt cannot, when pleaded, operate as an absolute bar to the farther maintenance of the action. If so pleaded, the plaintiff may reply the existence of the attachment; in which case a special judgment will be entered, and execution issued against the property attached."

The judgment of a court, in one of the United States, having jurisdiction of the cause and of the parties, is binding and conclusive upon parties and privies in every other court in the United States, until it is regularly reversed by some court having jurisdiction for that purpose.

But the judgment or order of a court having no jurisdiction of the subject matter, is entirely void.

The courts of the United States cannot lawfully treat as nullities the judgments of the courts of the several States, rendered in suits where the latter have juris-

Kittredge *v.* Emerson.

diction of the cause and the parties, even if they are founded upon an erroneous construction of the bankrupt act, or any other statute of the United States. The remedy, for the correction of the error, is by writ of error in the supreme court of the United States.

The jurisdiction of the district courts of the United States, to issue injunctions to stay proceedings in suits pending in the courts of the several States because the defendants have filed petitions in bankruptcy, may be inquired into in the State courts; and if it is found that the district court has acted without authority, the injunction may be disregarded, or the parties be enjoined from attempting to enforce it.

The courts of the United States, and the judges of those courts, are restrained by general laws from issuing injunctions to stay proceedings in any court of a State.

Whether the district courts of the United States have authority, in any case under the bankrupt act, to issue an injunction to stay proceedings in a state court, *quære.* It *seems* they have not.

However this may be, no such authority exists to stay proceedings after the bankrupt has obtained and pleaded his discharge, in bar of the action against him.

The circuit or district courts of the United States, sitting in bankruptcy, have no authority to stop the execution of the final process of the courts of the several States, or to interfere with the proceeds of a sale of property on the execution.

Where cases are pending in the courts of this State, in which an attachment of property was *bonâ fide* made upon the writ, before any act of bankruptcy by the defendant, and the defendant has obtained and pleaded his discharge in bankruptcy, the assignee, and all claimants of the property attached, may be enjoined from attempting to procure any process, from any court which is not acting under the authority of this State, with a view to prevent the entry of judgments in such suits, or to prevent the execution of the final process issued upon the judgments when obtained; and also from applying for, or attempting to execute any summary process, order, or decree of any court, with the view and purpose of taking from the creditors or their attorneys the fruits of such judgments as they may obtain, on account of any supposed want of right in the court to render those judgments, or any supposed invalidity of such judgments, so long as they shall remain in full force and unreversed. And all persons may also be enjoined and prohibited from making any application, or instituting any proceedings, founded on any supposed breach of an injunction or order issued by any tribunal not acting under the authority of this State, by reason of any proceedings in the courts of this State arising after the bankrupt has pleaded his discharge.

ASSUMPSIT, upon an account annexed to the writ.

At the court of common pleas, February term, 1843, the defendant pleaded, in bar of the farther maintenance of the action, that on the 26th day of April, 1842, he resided in, and was a citizen of this State—that he was owing debts which he was unable to pay, and on that day, by petition, applied to the district

Kittredge *v.* Emerson.

court of the United States for the district of New-Hampshire, for the benefit of the act of Congress of the United States, entitled " an act to establish a uniform system of bankruptcy throughout the United States"—that he was, on the 22d of June, 1842, by a decree of said court, duly declared a bankrupt—that on the 24th of said June he filed his petition, praying that he might be decreed to have a full discharge from his debts provable under his bankruptcy, and a certificate thereof granted to him—and that on the 16th of November, 1842, and since the last continuance of this action, a full discharge from all his debts was decreed and allowed by said district court, and a certificate thereof, under the seal of said court, was duly granted to him accordingly.    The plea set forth the proceedings in bankruptcy, at large, and averred that the several causes of action in the declaration mentioned, accrued to the plaintiff before the defendant filed his first petition, and were provable under said act of Congress.    Wherefore the defendant prayed judgment, &c.

To this plea the plaintiff replied, at the August term, 1843, that he ought not to be precluded from maintaining his action, because that in and by the plaintiff's writ, in the action aforesaid, called a writ of attachment, and sued out in due form of law on the 29th of March, 1842, the sheriff of any county in this State, or his deputy, was commanded, among other things, to attach the goods or estate of the defendant, to the value of three hundred dollars—that on the same day he delivered his writ to a deputy sheriff for said county of Rockingham, to be by him duly executed, who, on the 30th of the same March, by virtue thereof, attached all the right, title and interest of the defendant in certain real estate, bounded, &c. and left an attested copy of the writ and of his return with the town clerk, and on the 5th of March, 1842, left a summons in the action at the last and usual place of abode of the defendant, &c. all which it was alleged fully appeared by the return of said deputy upon the writ.    The replication then averred, that at the time of the attachment the defendant was seized and possessed of certain rights in the premises, of great value, to wit., of the value of three hundred dollars, &c.—that the plaintiff, by virtue of the attachment aforesaid acquired,

and still has, and ought to have a lien upon the premises so attached, and the rights of the defendant therein at the time of the attachment, within the meaning and intent of the said act of Congress, and that the plaintiff is not divested or deprived of said lien by anything alleged in the plea, but is entitled to prosecute this action to final judgment and execution, for the purpose of effecting a levy upon the rights of the defendant attached as aforesaid. Wherefore he prayed judgment for his damages, &c.

To this replication the defendant demurred specially, assigning for causes, that the plaintiff had not set forth the value of the defendant's interest in each parcel of the estate alleged to have been attached on the plaintiff's writ; and that the prayer of judgment in the replication is for the full amount of damages sustained by the plaintiff by reason of the nonperformance of the promises set forth in the declaration, and is not limited to the amount of the value of the defendant's interest in the estate attached on the plaintiff's writ.

The questions arising in these pleadings were saved, and transferred to this court for decision.

*H. F. French,* for the defendant, contended that the replication was bad in substance, because it had not set out a valid attachment and service of the writ. The date of leaving the summons for the defendant's appearance is alleged in the replication to have been on the *fifth of March,* 1842, which is several days before the action was commenced. It appears, therefore, on the face of the plea that the service is bad.

He argued also that the replication was defective in form, in praying a general judgment, when it should have been limited to the value of the property attached.

*Porter,* (with whom was *Pillsbury,*) for the plaintiff, remarked that previous to the decision of *Kittredge* vs. *Warren,* at the last term in Grafton, he had made some preparation to sustain the replication in this case, upon its merits; and since the decision of the case *Ex parte Bellows & Peck,* in the circuit court of the United States, lately published, he had made some notes respect-

Kittredge v. Emerson.

ing that case.  At the request of the court he furnished his brief, an abstract from which follows, excepting portions of the argument the matter of which was fully considered in *Kittredge* vs. *Warren*.

It is not necessary, he contended, to set forth the value of the several parcels of the estate attached.  If set forth, the value thus alleged could have no effect upon the proceedings.  All the plaintiff asks is, that he may have satisfaction of the judgment he may recover, out of the estate attached, if there is enough of it.  If there should be any surplus, it will go into the general mass of the defendant's property, and his other creditors will have the benefit of it.  If there should be a deficit, the plaintiff must bear the loss.

The replication is properly concluded by a prayer of judgment for the damages sustained.  This is an affirmation of the demand in the writ, and is the proper following up and sustaining the grounds of the action, always necessary to a good replication.

What we have always supposed ourselves entitled to, is judgment for our whole debt, and execution therefor, to be levied only upon the property attached.  6 *Law Reporter* 301, *Ex parte Rowell*.

In 2 *Chitty's Pl.* 596, (*N. Y. Edition of* 1809) is the form of a replication to a plea of the insolvent debtor's act, and judgment thereon.  The replication admits the facts stated in the plea, and then the plaintiff prays judgment, and his damages by him sustained on occasion of the nonperformance of the said promises and undertakings in the said declaration mentioned, to be adjudged to him according to the form of the statute in such case made and provided.  And then follows the judgment of the court, in this form—" Whereupon it is considered by the court here, that the said A. B. (the plf.) ought to recover his damages on occasion of the nonperformance of the said several promises and undertakings against the said C. D. (the deft.) to be levied, not on the person of the said C. D., but on his lands, goods and chattels, according to the form of the statute in such case made and provided," and then the court proceed to award a writ of enquiry of damages.

The replication furnishes all the facts necessary to the rendition

of the proper judgment, and the issuing of the proper execution, and concludes with a prayer of judgment for damages, &c. The &c. may well be considered as including a prayer for all else that may properly constitute a part of the judgment, according to the facts disclosed in the replication. This would be in strict analogy to the mode of replying to a plea of *plene administravit*, and praying judgment of assets *quando acciderint*. 2 *Chitty's Pl.* 612.

Having disposed of the several questions presented by the special demurrer, we come now to the main question. Does an attachment of real estate, on mesne process, create a lien upon the estate attached, in favor of the party attaching, according to the laws of New-Hampshire ?

The plaintiff had a valid subsisting attachment upon the defendant's real estate, at the commencement of his proceedings in bankruptcy. Has he in any way forfeited or lost the benefit of his attachment ?

In the case of *John S. Foster*, 5 *Law Reporter* 55, it is contended that the saving clause in the second section of the bankrupt act is to be considered as carved out of the enacting clause, and as saving only things *ejusdem generis* with the enacting clause. But if the liens, mortgages, and other securities, mentioned in the proviso, are to be considered as carved out of the matters of contract mentioned in the enacting clause, it would seem to follow that the enacting and saving provisions of the section might become destructive of each other. It cannot be correct to say that the saving clause takes back anything contained in the enacting clause, and in that sense is carved out of it.

The bankrupt act was never intended to sweep everything into its vortex. By the first section, certain debtors are excluded from its benefits ; and by the second section certain interests or rights are protected against its operation.

The rights of married women and minors are protected against the act, and every part of it, by the proviso in the section. Will it be argued that married women and minors are protected only in matters *ejusdem generis* with those specified in the enacting clause ?

The proviso in the second section might have constituted a separate section, or have been appended to some other section, without marring the structure of the act.

In the case of Foster it is supposed that the general policy and object of the act, to effect a distribution *pro rata* of the debtor's assets among his creditors, furnishes an argument of much weight against the supposition that an attachment on mesne process is a lien within the meaning of the proviso in the second section.

As reference is had in the second section to the fifth section, they must, undoubtedly, so far as they relate to each other, be construed together. The main feature and object of the fifth section is to provide for and secure the distribution *pro rata* of the debtor's effects among his creditors proving their debts, and to bar any suit at law or in equity in favor of such creditors for such debts. That is to say, a creditor having his debt secured by any lien, mortgage, or other security valid by the laws of the State, coming in and proving his debt under the bankruptcy, thereby loses his right of action and forfeits his lien. It amounts to only this, that a creditor voluntarily sharing the benefits of the bankruptcy shall not be exempt from its evils.

But especial reliance appears to be placed upon the provision in the fourth section, that the bankrupt's discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt which are provable under the act; and shall and may be pleaded as a full and complete bar to all suits, &c. We repeat again the principle already adverted to, that the several parts of the act are to be construed and expounded in reference to each other, so as to protect every right intended to be protected, and to afford every remedy intended to be given.

It may be laid down as an axiom, that whenever a right is given, or preserved, the remedy appropriate to obtain and protect the right is also given.

The saving in the second section embraces different sorts of lien; and to maintain his rights therein, the creditor must resort to different kinds of action. In case of mortgage of real estate,

one kind of action would be proper; in case of pledge of personal property, another kind would be resorted to; and in case of attachment by mesne process, still another, which must, of necessity, lie in the following up of the action to its final conclusion.

It has also been said, that the liens referred to in the second section are only such as arise from contract. If this is so, it is marvellous that Congress had not used language better fitted to their meaning.

In the recent case of *Bellows & Peck*, before the circuit court of the United States for the district of New-Hampshire, the doctrine laid down in the case of *John S. Foster* is reässerted and adhered to, in opposition to the doctrine established by the superior court of New-Hampshire, in the case *Kittredge* vs. *Warren*, since the decision in the case of Foster. It seems necessary, therefore, in discussing the case at bar, that the positions taken, and the reasoning employed, in the case of *Bellows & Peck*, should not pass entirely without notice. It is affirmed in the opinion of the court in that case, 7 *Law Reporter* 123, that an attachment on mesne process is not a lien in the sense of the common law. Admitting this to be so, how does it affect the matter in dispute, if the decision in the *Matter of Cook*, 5 *Law Reporter* 443, is correct, where it is held that the proceedings in bankruptcy, after judgment, can have no effect whatever upon that judgment, or upon the property attached in the suit. But the opinion proceeds to state, that " assuming it" (an attachment on mesne process,) " to be a lien, it is a contingent conditional lien, connected with mesne process, and only dependent for its value and efficacy upon the plaintiff's obtaining judgment in his favor in the suit." It is respectfully submitted that all this may be conceded, without danger to the doctrine we are attempting to maintain. Is it the less on this account a lien or security, fastened upon the property attached, to secure satisfaction of such judgment as the plaintiff may recover; and while the suit is in progress towards judgment, is it not as much a vested right in the plaintiff as it is afterwards? It may not be technically a right *in ré*, or *ad rem*, still it is a right, or lien, or security, valid by the laws of the State, and upheld by the mere pendency of

the suit; a right whereof the plaintiff cannot be devested, except by his own consent, so long as the suit continues.

But conceding that an attachment is a lien, the opinion still holds that it is not such a lien as is contemplated to be saved, or falls under the proviso in the second section. The saving clause reaches in terms all liens, mortgages, and other securities valid by the laws of the respective States. The language is broad enough certainly, one would think, and in terms sufficiently apt and appropriate, to cover attachments on mesne process, wherever they are known and recognized as liens, or securities, valid by the laws of the State.

But it is urged that the known policy and object of the bankrupt act, to effect a distribution of the bankrupt's assets among his creditors, is to have weight to justify the conclusion that an attachment on mesne process is not a lien within the meaning of the saving clause of the second section. It is not perceived by what allowed and approved rule of construction the language of the enacting clauses of the act should enjoy a most enlarged and liberal construction, and the saving clauses be held to a construction the most narrow and stringent. Both classes of provisions belong equally to the act, and equally demonstrate its policy and object, and demand to be expounded and applied by one and the same rule.

In the case before referred to, it is farther insisted that " it is clear, by the bankrupt act of 1841, ch. 9, § 4, this" (the debt sued for) " was a debt of the bankrupt provable under the bankruptcy; and equally clear that, if so proved, then the certificate of discharge operated to discharge the debt." May it not be justly replied, that the conclusion is much too broad for the premises? There is a wide distinction between a debt provable, and a debt proved, under the bankruptcy. There is a large class of debts, such as debts secured by mortgage, pledge, &c. and the various fiduciary debts, which may, if the creditors elect, be proved under the bankruptcy; and, if so proved, (not provable,) then the certificate of discharge is a good bar.

It has been farther objected, that no " judgment can be rendered against any person, in a personal suit, for a debt which

has been discharged." Now this objection assumes as true what is all along denied, namely, that the debt is, by the proceedings in bankruptcy, absolutely, and to all intents, discharged. It has too much the appearance of *petitio principii* to be regarded as concluding the argument. Against this assumption we maintain that the attachment upholds and sustains the debt, so far as that is necessary to the upholding of the attachment or mortgage. They mutually lean upon, and support, each other. If the debt is in fact discharged by the proceedings in bankruptcy, as fully and perfectly as it would be by a release obtained *pendente lite*, then undoubtedly such discharge would be an effectual bar to any suit for the debt; but whether or not the debt is so discharged, is the material matter in dispute.

The position taken that a suit *in personam*, for a debt secured by mortgage, would be barred by the defendant's certificate and discharge in bankruptcy, need not be controverted. Such a suit is clearly not necessary or appropriate to save the right; whereas, in case of attachment on mesne process, if the suit is not followed up to judgment, the security is lost; and if any provision in the bankrupt act saves and preserves the right, the proper and only remedy must also be saved.

The ground has also been taken, that the right of the mortgagee to mortgaged property may survive, and be in force after the debt has been extinguished. This may have been so held in some cases, in very early times, but in what instance would it be so adjudged at the present day? It has long since been the doctrine, if not always, that the debt is the principal, to which the mortgage is a mere incident, and the destruction of the principal is fatal to the incident, it not being capable of a separate and independent existence. Take, for example, the favorite illustration of a release of the debt, obtained pending a suit to recover possession of mortgaged property. Is there the smallest doubt that such a discharge, if pleaded *puis darrein continuance*, would put an end to the suit, and forever release the mortgaged property from the incumbrance? Again, take the case of a creditor who comes in and proves his debt, secured by mortgage, under the bankruptcy. Is not the debt, the debtor having

obtained his discharge, forever extinguished, and does not the mortgage thereby become equally lifeless?

It is freely admitted that attachments on mesne process and mortgages are dissimilar in many important particulars. They are alike, however, in this—being both subject to be defeated, or made void, on condition subsequent. And there is still another particular in which they often bear a striking resemblance. Take, for instance, mortgages to indemnify, in which the uncertainty as to the amount for which they may finally hold, as well as whether they will eventually hold for anything, is certainly as great as it possibly can be in cases of attachment on mesne process.

It has been said that the proceedings in a suit on a mortgage "do not compel the bankrupt to pay the debt for which the mortgage was given, but simply foreclose his right to redeem, unless he shall voluntarily pay the debt. It acts, therefore, not at all *in personam*, but solely *in rem*." Is not the same thing equally true, in substance and effect, though not in technical philology, of a suit in which property has been attached on mesne process, and plea of the defendant's discharge in bankruptcy pleaded, with a reply setting forth the attachment; the suit being subsequently followed up, and carried to final judgment, with no other object or result than to foreclose the right of the defendant to have restoration, without payment of the debt, of the property attached?

It has been admitted and decided in the circuit court of the United States for the district of Massachusetts, in the *Matter of Cook*, 5 *Law Reporter* 443, that the lien by attachment on mesne process is made perfect by the judgment, without any new seizure of the property attached, notwithstanding proceedings in bankruptcy intervene between the time of the judgment and levy. Yet it is not, and cannot, be pretended that any right of property *in re*, or *ad rem*, vests in the plaintiff in consequence of the judgment. He still stands upon his lien, yet remaining conditional, and depending upon a levy within thirty days from the judgment; as well as upon the judgment not being otherwise satisfied. The plaintiff's right to a judgment in his favor,

Kittredge v. Emerson.

and the amount, are thereby made certain; but his right to hold every particle of the property attached is in no way increased or diminished, or in any way at all affected, as we can perceive. He cannot assert, nor indeed can the attaching officer assert, any new right, or remedy, touching the property attached. How then can it be said that the attachment subsequent to the judgment is a lien, within the meaning of the bankrupt act, and that prior to the judgment it is not so. The distinction is not found in any express provision of the bankrupt act, nor in any enactment of the State legislature; and it is believed it cannot be found in any heretofore known and recognized principle, asserting or admitting any change produced by the judgment in the nature or character of the attachment.

There is in the replication a mistake in stating that the summons was delivered upon the fifth day of March, instead of the fifth day of April. If this should be found at all material, we shall ask leave to amend, according to the truth of the case.

PARKER, C. J.   Two exceptions to the replication have been taken by the defendant's counsel, but both must be overruled.

The allegation of the delivery of the summons on the fifth day of March, before the suit was instituted, is repugnant to the other matter of the replication; but it is immaterial, and may be rejected as surplusage. The defendant has entered a general appearance to the action, and has pleaded to the merits. If there was any irregularity in the service of the summons, he should have taken advantage of it in abatement, or on a motion to quash the writ. As he did neither, he waived all objections of that character. After a plea to the merits, he cannot plead in abatement that he was not duly summoned to appear, nor could he at this stage of the proceedings move to quash the writ for such a reason. 5 *Burr.* 2611, *Rice* vs. *Shute;* 3 *Pick. R.* 595, *Ripley* vs. *Warren;* 21 *Pick. R.* 535, *Carlisle* vs. *Weston;* 1 *Metcalf's R.* 511, *and cases cited.*

The delivery of the summons is not a part of the attachment, which is made before the summons is served. 5 *N. H. Rep.* 275, *Pemigewasset Bank* vs. *Burnham;* 7 *N. H. Rep.* 399,

427, *Kittredge* vs. *Bellows ;* 24 *Pick. R.* 12, *Wilder* vs. *Holden.* An attachment of goods may be perfect, so that neither the debtor or another officer can interfere with them, notwithstanding no summons has yet been delivered. But the delivery of the summons is necessary to complete the service of the writ, and to require the defendant to answer to the action. As no exception can now be taken to the service, the attachment seems to be valid, even if no summons was served on the defendant. "The attachment of property," (says Mr. Justice *Collamer,*) "is *one* thing, the notice to the party is *another.* They are different commands, and the officer has distinct duties to perform for these purposes. The circumstance that both commands are, in this State, contained in the same process, does not alter the case. If the officer take personal property, and return that he has so done, or attach real estate and leave a copy with the town clerk, he has made an attachment, and the court has jurisdiction of the party. If the return also shows notice, it is well ; but if his return shows the officer has not done what the law requires he should do, for that purpose, it is merely cause of abatement." 11 *Verm. R.* 648, *Gilman* vs. *Thompson.*

As to the other objection.—The replication alleges that the plaintiff is entitled to prosecute the action to final judgment and execution, for the purpose of effecting a levy upon the rights of the defendant, attached in the suit, and thereby perfecting his title thereto. This shows the right he sets up ; and if there was any imperfection in the prayer of judgment, it would be the duty of the court to give such judgment as appeared from the whole record to be proper, without any regard to such imperfection. 4 *East R.* 502, 509, *LeBret* vs. *Papillon, and cases cited.*

Our opinion upon the general effect of this replication, as an answer to the defendant's plea, was expressed upon the last circuit, in the case *Kittredge* vs. *Warren.*

The conclusions to which we came in that case were not hastily adopted. The subject matters involved in it had been brought to our notice, incidentally, from time to time, after the passage of the bankrupt act, by decisions elsewhere upon the construction of the last proviso in the second section of the act ; and

after the case itself was presented for our consideration, we had sufficient time for deliberation before the decision was pronounced.

So far as the mere matter of authority was concerned, the adverse decisions, which had been made in Massachusetts and Vermont, could render us but little aid, if they did not actually operate to embarrass and perplex us. On the one hand, the learned judge of the first judicial circuit of the United States, in the case *Ex parte Foster*, had held that a creditor who had made an attachment under the laws of Massachusetts, before any petition or act of bankruptcy of his debtor, ought, after such petition, to be restrained, by injunction, from prosecuting his action to judgment, for the purpose of availing himself of his attachment, because it would be against the policy of the bankrupt act to permit him to gain a preference in that way over the other creditors. And he had, in the same case, indicated an opinion that an attachment under the laws of Massachusetts was not a lien or security upon property, within the saving of the bankrupt act; and that, even if it was within the proviso and saving, yet, as it was an inchoate and contingent security, the creditor should not be permitted by a race of diligence to perfect it, but should be restrained until the bankrupt could procure and plead his certificate, which would defeat the suit, and with it the security. This decision, it was understood, had governed the action of the learned judges in the Massachusetts and New-Hampshire districts, who, so far as we were advised, had not promulgated their own opinions on the subject.

On the other hand, we had before us the opinions of the learned judge in the district of Vermont, holding attachments under the laws of that State, made before a petition or act of bankruptcy, to be liens within the saving of the act, upon which the creditor was entitled to proceed to judgment, for the purpose of availing himself of his security. And in this opinion the late learned and lamented judge of the second judicial circuit of the United States had fully concurred. Another decision of the district judge there, held, what seemed to be but a fair and legitimate consequence of the first, that the certificate, when obtained and pleaded, was not a bar to the farther prosecution of the suit.

The attachment laws of Vermont, so far as the saving clause of the bankrupt act was involved in the matter, were understood to be substantially like those of Massachusetts, and both of them like those of this State.

The decisions in Massachusetts and Vermont were, therefore, directly opposed and in conflict. On a similar state of the local law, and a similar state of facts, the bankrupt law, in its practical operation, had been one thing in Vermont, and another thing in Massachusetts, by reason of this conflict of decisions ; and it was clear that the cases in the two districts could not stand together as correct expositions of the law, however conclusive they might be, in their respective districts, in point of fact.

Subsequent decisions, in the circuit court of Massachusetts, were certainly regarded by many as establishing material qualifications of the general views expressed in *Ex parte Foster*, if not as surrendering some of the doctrines there stated. It is not of much importance how this may be. If the decisions in the first circuit can all be reconciled with each other, and they seem to have received a general confirmation, it will not essentially vary the state of the case.

If such a thing as weight of authority can be predicated upon these decisions in the courts of the United States, there is certainly no disrespect to the learned judge who presides in the first judicial circuit, in saying that such weight is adverse to the opinion expressed by him in *Ex parte Foster*, as that opinion stands alone, and in opposition to the opinions of the circuit and district judges sitting in Vermont, whose long judicial administration, in the tribunals of New-York, Vermont, and the United States, has acquired for them a judicial character which does not need the aid of our humble commendation.

It was not upon weight of authority, however, that we relied, in forming our opinions in *Kittredge vs. Warren*. Pursuing the chain of reasoning which our own limited experience and studies suggested to us, we drew our conclusions from that course of reasoning.

We found that attachments had been denominated "*liens*" in the laws of the State ; in the opinions of this court, and of the

supreme courts of Massachusetts, Maine and Connecticut; in the laws of Vermont, and in the opinions of the supreme court of that State ; and by Mr. Justice Story in his treatise on bailments. There seemed, therefore, to be some evidence of the propriety of such a designation. *See, also*, 13 *Peters's R.* 151, *Wallace* vs. *McConnell ;* 1 *Kent's Com.* 397, *note, and auth. passim.*

But without relying upon that, it appeared to us incontrovertible that they constituted a ' security upon property', valid by the laws of the State, that they were, therefore, within the express saving of the last proviso of the second section of the bankrupt act, and that they were quite as much within the reason of the saving as liens or securities by judgment, which were admitted on all hands to be saved. We thought that one part of the act was not to be construed as destroying, or authorizing the debtor to destroy, what another part of the act expressly saved to the creditor ; and that the certificate could not, therefore, if pleaded, be admitted as an absolute bar to the action, if the plaintiff replied the existence of an attachment before any act of bankruptcy.

These conclusions were, undoubtedly, not entirely in coincidence with the positions taken in *Ex parte Foster ;* but we sedulously endeavored to express them with all due courtesy and respect, and upon a review of our opinion, (which was immediately printed, for use in the circuit court by parties having matters there pending,) we are unable to discover any failure in that particular. While we greatly regretted this difference of opinion, it was no small gratification to us that we could fortify our conclusions by the opinions of others so highly distinguished. The case *Ex parte Tebbets* seemed, moreover, to be a very strong authority in support of our conclusion, that `the certificate was not a bar to the action, provided the attachment constituted a security within the saving of the act. If to a plea in bar, founded on the certificate of discharge, the plaintiff might reply that the debt was a fiduciary debt, and so not within the operation of the act, we certainly did not discover why he could not well reply any other matter showing a right exempted from its operation, and which could be, and to be effectual must be, enforced by the action. And it was perfectly apparent to us that the forms of

proceeding interposed no obstacle whatever to a special judgment, which would enable the creditor to avail himself of the security which the act saved to him, while at the same time it provided for the security of the debtor, and gave to the certificate of discharge all the operation which the act intended. It was on this ground we held that the debt was not discharged so far as its existence was necessary to uphold and sustain the security, but subsisted to that extent, and for that purpose, as if the bankruptcy had never taken place.

Upon the promulgation of that decision, the true course for parties having cases involved within the principle of it, and desirous of having the matter farther tested, was, as it seems to us, extremely clear; and that was, with all convenient speed to put some case in a train for obtaining the opinion of the supreme court of the United States.

If no power existed in that court to revise the decisions of the circuit and district courts in bankruptcy, no objection was perceived to its jurisdiction over the decisions of this court, involving the construction of a statute of the United States, even if that statute was the bankrupt act. The opinion in *Kittredge* vs. *Warren* refers to this ultimate resort.

Several cases, in which Bellows and Peck were defendants, and in which the defendants had pleaded their discharge in bankruptcy, and the plaintiffs had replied the existence of an attachment, came under my notice shortly after in the common pleas; and I strongly recommended to the parties to carry one of them to the supreme court with all practicable expedition, and in the mean time to continue all the other suits, to await the event.

But the defendants in those cases, or their assignee, preferring to rely upon what was probably deemed a more assured course, rejoined that an order had been made in the district court, upon the sheriff, to deliver up the property to the assignee; and it seems that they, or the assignee, resisted a petition, filed by the sheriff and his deputy, in that court, for a revocation of the order, whereupon the district judge adjourned two questions into the circuit court for the first circuit—One, whether an attachment of property, under mesne process, *bonâ fide* made, before a petition filed

in bankruptcy by the debtor, is a lien or security valid by the laws of this State, and thus within the proviso of the second section of the bankrupt act,—and the other, whether any, and what relief, should be granted to the officers who asked for the revocation of the order.

It was undoubtedly rather to be desired than expected, that the reasoning in *Kittredge* vs. *Warren* should have been satisfactory and convincing to the mind of the learned judge of the first circuit; and it would have been quite agreeable to us, had the courts of the United States, aware of the difference of opinion which existed between us, seen fit to leave the parties to seek a final adjudication, binding upon all of us, through the ordinary course of a writ of error. But this was a matter for their consideration, and we can only regret that a different course has been adopted. The learned judge, upon taking up the questions for decision, professing to consider the points involved in the first question, so far as his judgment was concerned, as fully discussed and fully decided, declared his intention not to discuss them in any manner whatsoever. The opinion before us, however, (" *In the matter of Bellows & Peck,*" 7 *Law Reporter* 119,) seems not to be confined entirely to the second; and the remarks there made, upon *Kittredge* vs. *Warren,* induce us to review the opinion we expressed in that case.

We shall make no comment upon the general tone of the opinion in *Ex parte Bellows & Peck,* nor shall we complain, that in expressing a dissent from our opinion, which the learned judge thought it expedient to make emphatic, and characterized as one which he manifested " *toto animo,*" he should have seen fit to pass in entire silence the learned opinions in Vermont, which, if they did not produce the result in *Kittredge* vs. *Warren,* as a matter of authority, certainly sustained it with great force and cogency of reasoning. The case before him did not perhaps require any consideration of decisions elsewhere. But we have some reason to animadvert upon the fact, that his published decision, unintentionally without doubt, seems to attribute to us opinions which we neither formed nor expressed.

" The whole error in the argument," says the learned judge,

" consists in assuming two propositions as the basis on which it rests, neither of which is, in my judgment, maintainable, either upon the general principles of law or the obvious purposes and provisions of the bankrupt act of 1841, ch. 9. The first is, that the attachment, if it is a lien within the meaning of the second section of that act, becomes, in virtue thereof, not a contingent, or conditional lien, or security dependent for its efficacy upon a judgment being rendered in the particular suit in favor of the plaintiff for the debt ; but that it becomes *de facto* an absolute uncontingent and unconditional lien, which entitles the plaintiff to proceed to judgment in the same suit for the debt, although the debt is, by the certificate of discharge, barred as against the bankrupt, and there can be no general judgment rendered against him for the debt. The second is consequent upon the first, that the lien is equivalent to a mortgage upon the property, and entitles the plaintiff to the same rights and remedies that he would have upon a mortgage. Now, I utterly deny that either of these propositions is maintainable at law upon any known principles ; and it is incumbent upon the party who asserts them, to establish their validity." *Ex parte Bellows & Peck,* 7 *Law Reporter* 125.

It may be, that the argument here intended is that of the counsel in the case of *Bellows & Peck,* but such certainly appears to us not to be the import of the language, connected as it is with the remarks upon the case of *Kittredge* vs. *Warren,* which precede and follow this clause.

If the argument by which our conclusions in that case are attempted to be sustained is intended, the remark is certainly founded in a great mistake respecting our reasoning, or exhibits a singular want of precision in the terms in which it is expressed.

With respect to the first of these supposed errors.—No small portion of the opinion, in the case of *Bellows & Peck,* is devoted to the proof of a position that if the debt is discharged it cannot subsist. A cursory reader might suppose, from the manner of it, that in *Kittredge* vs. *Warren* we had attempted to maintain, that notwithstanding the certificate absolutely discharged the debt, it still subsisted, and judgment might be rendered upon it. " I profess myself wholly unable" [it is said] " to comprehend how

any judgment can be rendered against any person in a personal suit, for a debt which is discharged ; for the judgment declares the debt to be due from him, and directs a recovery accordingly. The record itself, upon such pleadings, ascertains that there is no debt ; and yet the award of judgment is, or must be, that there is a debt recoverable from the party." 7 *Law Reporter* 124. " The bankrupt act of 1841, ch. 9, if the lien be saved by the second section, saves only the lien as it is, and the remedy as it is. It does not make a lien absolute, which is only conditional or contingent. It does not change a lien, which is founded upon mere mesne process, into an absolute right. It does not supersede or control or vary any bar to the suit which the law either protects or recognizes ; much less does it say, that if the debt is eventually discharged by operation of law, it shall still subsist for the purpose of being satisfied in that very suit, which is a mere proceeding *in personam.*" *Ditto* 126. And again : " I profess myself utterly unable to comprehend how or upon what principle a judgment can be rendered in a personal action for a debt against the defendant, when, upon the pleadings, the debt is admitted to be discharged by operation of law." *Ditto* 127.

But this opinion, if intended to overthrow our doctrine in *Kittredge* vs. *Warren,* on this point certainly does not present a fair statement of it. That doctrine was, that the existence of the lien or security, obtained by an attachment, is in no way contingent, conditional, or inchoate ; that its existence does not depend upon the judgment ; that it exists in full force from the moment the attachment is made, as much so as a lien by judgment, upon the rendition of the judgment, in States where that security is recognized. We admitted that it was conditional, in the sense that liens by judgment are conditional,—that it depended upon contingencies whether it would ever be made available to the creditor ; and so it is with liens by judgment, where there is a period in which they cease to exist if the judgment creditor has not proceeded to seize the property.

And having established to our own satisfaction that the security was not inchoate, but existed in full force from the moment the attachment was made, we concluded that it was a security within the saving of the act.

Our next proposition was, in effect, that what the act saved, the certificate of discharge did not destroy,—that the discharge, therefore, although general in its terms, did not in fact operate upon the debt so far as this security extended, but that the debt continued to exist to that extent, for the purpose of making the security effectual, and enabling the creditor to avail himself of it, and was only discharged, thus far, by the application of the security to its payment. It is a sound maxim of the common law that, *aliquis quod concedit, concedere videtur et id, sine quo res ipsa esse non potuit.*

The principle that a debt may subsist for some purposes, and not for others, has nothing of novelty in it. 11 *Mass. R.* 125, *Perkins* vs. *Pitts;* 2 *Conn. R.* 161, *Baldwin* vs. *Norton;* 6 *Conn. R.* 373, *Lockwood* vs. *Sturdevant;* 3 *Verm. R.* 26, 42, *Catlin* vs. *Washburn;* 7 *N. H. Rep.* 97, *Robinson* vs. *Leavitt.*

It may be released, except so far as it shall be satisfied by a particular suit in foreign attachment, and subsist to that extent to sustain the action. 3 *N. H. Rep.* 395, *Wallace* vs. *Blanchard and Trustee.*

However carefully it might have been laid up among the maxims of the law, " that a discharge in bankruptcy, *pendente lite,* was a good bar, and might be pleaded as such to the suit," upon which we expressed no doubt whatever, we did not suppose that a discharge in bankruptcy, pending a suit which was exempted in whole or in part from the operation of the discharge, could be pleaded as an absolute bar of such suit. And that the discharge, although general in its terms, did not operate as a bar of all suits founded on debts provable under the act, we had the authority of *Ex parte John C. Tebbets,* as before stated. 5 *Law Reporter* 259. In that case, after holding that "fiduciary debts are provable under the proceedings in bankruptcy, equally with other debts, at the creditor's election," and that, if not proved, they " are not extinguished by a discharge and certificate under the act," it is said, " there is no necessity to exempt fiduciary debts from the general terms of the discharge and certificate ; for if they are by implication excepted from the operation of the act, where the fiduciary creditor does not elect to come in and prove his debt,

and take a dividend under the proceedings, it is plain that the terms of the discharge and certificate, however general, cannot vary or control his rights ; and that his debt will not be barred or extinguished thereby ; but he may, if the discharge and certificate are pleaded to any suit for his debt, reply the fact that it is a fiduciary debt." *Ditto* 267.

Whether *Ex parte Tebbets*, however, is any longer to be regarded as authority, may admit of doubt. In the course of the opinion in *Ex parte Bellows & Peck* it is said, " It is clear, that by the bankrupt act of 1841, ch. 9, § 4, this was a debt of the plaintiff, provable under the bankruptcy, and equally clear that if so provable, then the certificate of discharge operated to discharge the debt." 7 *Law Reporter* 124. And again: " the bankrupt act of 1841, ch. 9, § 4, declares that a ' discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all debts, contracts and engagements of such bankrupt which are provable under this act ; and shall be and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever.' This is in substance like the provision in the English bankrupt acts. And there never has been any doubt, that it is a perfect bar to any personal action brought to recover any such debt after the certificate of discharge has been obtained." *Ditto* 126.

This, according to our understanding of the matter, is somewhat at variance with so much of *Ex parte Tebbets* as holds that a fiduciary debt is provable under the commission, but that if not proved the discharge will not bar it. But it is not material to our purpose whether that case is overruled or confirmed. Although we have cited it in confirmation of our views, they by no means depend upon it.

Then, as to the second alleged error. We certainly never asserted that the lien of an attachment " is equivalent to a mortgage upon the property, and entitles the plaintiff to the same rights and remedies that he would have upon a mortgage." We expressly admitted, as has already been stated, that it was conditional, in the sense that liens by judgment are conditional ; that it depended upon contingencies whether it would ever be

made available to the creditor. But we held that these contingencies by no means disproved the existence of the security.

It never occurred to us that any one would contend, that an attachment, like a mortgage, gave the creditor the right to take possession of the property, and hold it, or to foreclose the right of redemption. Nor, until we saw the learned opinion in *Ex parte Bellows & Peck* did we understand that any one was supposed to have assumed any such position. And yet, such must be the doctrine of the individual who holds that an attachment is equivalent to a mortgage, and entitles the plaintiff to the same rights and remedies that he would have upon a mortgage.

What we did say was this : " It is perfectly clear that there must be exceptions to the language of the fourth section ; cases where the debt, which was provable under the act, and not proved, must be holden to subsist, notwithstanding the certificate of discharge. Thus mortgages are saved by the proviso ; and notwithstanding the certificate of discharge, the debt upon which a mortgage is predicated must be holden to subsist, so far as it is necessary to sustain any legal proceedings for the foreclosure of the mortgage. Under our statutes the conditional judgment must be entered, that if the amount of the debt is paid within two months, the judgment shall be void, otherwise a writ of possession shall issue. But if the debt was fully and completely discharged, there would be a good defence to the mortgage which is the incident to the debt. So in the case of a lien by pledge. The discharge would be no bar to proceedings in equity for the sale of the pledge in order to apply the proceeds in satisfaction of the debt. And so in cases where attachments have been made, and judgments obtained before petition ; as in *Cook's case*, where it is admitted that the lien is saved. The debt subsists, notwithstanding the discharge, so far as to uphold the attachment, and execution, and the right to sell the property upon it. And this is not because there is no opportunity to plead the discharge, after judgment ; for if the discharge operated to defeat the debt, the judgment creditor to whom nothing would then be due might be, and ought to be, restrained by injunction from selling the property attached." 7 *Law Reporter* 86 ; [14 *N. H. Rep.* 537.]

The elaborate reasoning, therefore, in *Ex parte Bellows & Peck*, to show that there is a difference between an attachment and a mortgage, is entirely lost, if it was intended to apply to the doctrine of *Kittredge* vs. *Warren*. *See* 7 *Law Reporter* 127.

We adverted to mortgages by way of illustrating our position that the debt would subsist notwithstanding the discharge, so far as it was necessary to uphold the security, assuming that to be within the saving of the proviso. And that very doctrine must be held in this State, in order to save mortgages from the operation of the discharge. For notwithstanding mortgages are within the express terms of the proviso of the second section, they are not entitled to any greater exemption from the operation of the bankrupt act than securities by attachment are, if it be once shown that they also are within the same proviso. By the laws of this State, if, before foreclosure, the debt is gone, the mortgage is gone ; and this is supposed to be the case generally, although in some governments it has been held that the legal title is still in the mortgagee, until devested by some farther proceedings. With us, when the debt is discharged, and no longer subsists, the mortgage is absolutely void. 11 *N. H. Rep.* 131, *Batchelder* vs. *Taylor ;* 1 *N. H. Rep.* 332, *Swett* vs. *Horn.* And if the certificate in bankruptcy discharged the debt, the party might avail himself of that fact, here, in a writ of entry founded on the mortgage. In such action we ascertain the amount of the debt, and render a conditional judgment, that if the debt is not paid the mortgagee shall have a writ of possession.

Assuming, therefore, that attachments are securities saved by the proviso in the second section of the bankrupt act, the same process of reasoning which defeats them, afterwards, by the allegation that the certificate operates as a discharge of all debts provable under the act, would defeat a mortgage also, notwithstanding the difference of the proceedings to enforce the two. If an attachment is a security within the proviso of the second section, it is expressly saved from the operation of the act; and a mortgage is no more than expressly saved. If it be held that an attachment is only saved in case it can be made available by a judgment before a certificate is obtained, a similar process of

Kittredge v. Emerson.

reasoning may show that a mortgage is saved only in case the mortgagee forecloses before the certificate is granted. It is only to give the broad language of the fourth section its broad literal import, and the thing is done. The debt is provable under the bankruptcy, and is therefore gone, and the mortgage falls with it, the debt being the principal, and the mortgage the incident. If the forms of proceeding did not admit of pleading the certificate of discharge, the mortgagee could readily be enjoined from attempting to foreclose, after the debt was discharged.

There can be no doubt that a debt secured by a mortgage is discharged by the act, except so far as it subsists to uphold the mortgage. We repeat, therefore, that the same process of reasoning which saves mortgages from the operation of the certificate of discharge, saves a security by attachment also, if it is once shown that the latter is a security within the saving of the act. And we have the authority of the supreme court of Connecticut, " that the lien of a creditor acquired by the attachment of a particular piece of land, is as specific, and, under similar circumstances, stands on as high equitable ground, as a lien by mortgage of the same land." 8 *Conn. R.* 550, *Carter* vs. *Champion.*

It seems to be supposed, in the *case of Bellows & Peck,* that the form of the proceeding presents an insuperable objection to the doctrine of *Kittredge* vs. *Warren.* See 7 *Law Reporter* 124, 127, *before cited; Ditto* 128.

The difficulty thus suggested is, in our view, wholly imaginary. It rests altogether upon matter of form, and has nothing of substance in it. The form of the process is to be moulded to meet the demands of the law, and sustain the rights of the parties.

The mode of foreclosing mortgages is just what the law of different States makes it. In some places, it may be by entry *in pais,* in some, by writ of entry on the mortgage, in some, by bill in chancery, and a sale of the mortgaged premises. The statute of Illinois, passed January 17, 1825, provided that if default be made in the payment of any sum of money, secured by mortgage, the mortgagee might sue out a writ of *scire facias,* requiring the mortgagor, &c. to show cause why judgment should not be rendered for the money due; that the court

might proceed to give judgment with costs for such sum as was due, and also that the mortgaged premises be sold to satisfy the judgment, and award a special writ of *fieri facias* for that purpose. Suppose the statute of this State had directed that a party, in order to foreclose a mortgage, should bring an action of assumpsit, or debt, upon the note, or bond, secured by the mortgage, alleging that it was secured by mortgage ; and that the court, if no sufficient cause was shown, should render judgment for the debt, and issue execution, on which the mortgaged premises should be sold. This would certainly be in substance similar to proceedings in some of the States for a foreclosure of a mortgage. Would a mortgage here be any the less within the saving of the bankrupt act, because, in order to foreclose it, the proceeding must be *in personam*, as far as the form was concerned ? Is it so in Illinois ? No court would so far " stick in the bark" as to hold any such doctrine. It would be merely a mode of applying the mortgaged premises to payment of the debt ; or, in other words, of foreclosing the mortgage. But if the form of proceeding furnishes an objection to the doctrine of *Kittredge* vs. *Warren*, it would equally show that a mortgage in such case, although expressly saved by the proviso of the second section, was barred and discharged by a certificate in bankruptcy ; because, the proceeding being *in personam*, the discharge might be pleaded, and no judgment could be rendered for the debt.

That the form of proceeding furnishes no obstacle whatever, seems to be not only clear in principle, but is fully shown by authority. The case *Ingraham* vs. *Phillips*, 1 *Day's R.* 117, decided under the former bankrupt act, is directly in point. And so are the opinions of Mr. Justice *Prentiss* upon the late act, 5 *Law Reporter* 400, *Downer* vs. *Brackett ;* 6 *Law Reporter* 301, *Ex parte Rowell*. Such also must have been the opinion of Mr. Justice *Thompson*, 5 *Law Reporter* 505, *Houghton* vs. *Eustis*, *and note.*

In an action upon a promise in writing to pay $200, in two years, " out of any property I may possess, my body being at all times exempt from arrest,"—it was held, by this court, that the plaintiff might maintain his suit upon a count for money had and

Kittredge *v.* Emerson.

received, but that execution should issue against the property alone. 6 *N. H. Rep.* 51, *Chickering* vs. *Greenleaf.* If a suit *in personam* could thus be turned into a general remedy against the property alone, at a time when judgments in suits of that description generally authorized executions against the body, there can be quite as little difficulty in proceeding against particular property, in the same form, where the plaintiff has the right to appropriate such property to the payment of his demand, but is restricted to that remedy alone.

"If," says Mr. Justice *Hutchinson*, "the statute has given rights unknown to the law before, we can expect no forms exactly suited to the presentation of those rights for adjudication. Yet so far as we can find a course prescribed in practice, prudence dictates that we preserve that course so far as it leads, and observe some analogy of legal principles for the remainder of the forms of proceeding." 1 *Verm. R.* 482, *Martin* vs. *Trowbridge.*

This is precisely what we have endeavored to do in this matter. The attachment being a security saved by the act, we have pursued the ordinary course of legal proceeding, to make it effectual to the creditor, by rendering a judgment which may uphold it; but as the remaining proceeding is, in effect, a proceeding *in rem* only, we have preserved as far as we might an analogy to proceedings of that character, by making the judgment one which is to operate against the property only, and issuing an execution in terms appropriate for that object.

It is admitted that a proceeding in form *in personam* may be in effect a proceeding *in rem*, in cases where property has been attached, but the defendant is not within the jurisdiction of the court, and has not appeared. *Story's Confl.* 461.

It may well be said, that the whole matter in controversy now depends upon the question, whether the certificate of discharge in bankruptcy will defeat and destroy a security expressly saved from the operation of the act by the proviso. We are aware that the learned judge says, in *Ex parte Bellows & Peck*, "Assuming it" [an attachment] "to be a lien, it is a contingent conditional lien, connected with *mesne process*, and only dependent for its value and efficacy upon the plaintiff's obtaining judgment in

his favor in the suit.　The second point is of far more importance; and that is, whether it is a lien within the purview of the saving of the second section of the bankrupt act of 1841, ch. 9.　I was of opinion in *Ex parte Foster*, 5 *Law Reporter* 55, 66, 67, that it was not, and for the reasons therein stated.　I now retain the same opinion; although my present judgment does not, any more than that in *Ex parte Foster*, require me, with reference to the merits of the case now before me, to rely on that opinion."　7 *Law Reporter* 123.——But, to our apprehension, this position is distinctly abandoned in a single subsequent sentence of the same opinion, where, speaking of an injunction to stay proceedings in a suit in which an attachment has been made, he says, " If no discharge is obtained by the bankrupt, then the creditor may, by petition, apply to the district court to dissolve the injunction; and if dissolved, the creditor may then proceed to perfect his attachment by judgment and execution."　*Ditto* 130.　But the creditor could have no right to " perfect his attachment;" or in other words, to hold the property attached, and, having obtained judgment, to sell and apply the proceeds to the satisfaction of his execution, if the attachment were not a security upon property, saved from the operation of the act.　By the third section of the act, " all the property and rights of property, of every name and nature, and whether real or personal, or mixed, of every bankrupt, except as is hereinafter provided, who shall, by a decree of the proper court, be declared to be a bankrupt within this act, shall by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested, out of such bankrupt, without any other act, assignment, or other conveyance whatsoever; and the same shall be vested, by force of the same decree, in such assignee as from time to time shall be appointed by the proper court for this purpose," &c. &c.　If the attachment did not constitute some charge, or lien, or security, upon the property, duly constituted and existing before the decree, then the property, like other property of the bankrupt, would, upon the decree of bankruptcy, by operation of law, be devested out of the bankrupt, so that no security could afterwards attach, or be charged, or be perfected, upon it; and the inchoate, incomplete something, called an attach-

ment, made and returned, but not in existence, must of course be dissolved; and upon the appointment of the assignee, the property would vest in him absolutely, and without any incumbrance. Whether the bankrupt received his discharge, or not, the property having thus vested in the assignee, must be distributed among the creditors, and there would be nothing of the attachment which a judgment could perfect, even if a judgment might in any case perfect an attachment; which, however, is wholly denied.

If, on the other hand, the property is not thus divested out of the bankrupt, and vested in the assignee, absolutely, without incumbrance, it is because there is at the time of the decree a subsisting charge, or incumbrance, upon the property, by means of the attachment existing at the time; and, if this is so, that charge, or incumbrance, is a security, or lien upon the property, which the creditor has already taken by means of his attachment. The attachment is something existing, and fixed upon the property, so that the right of property which passes to the assignee is subject to it.

When it is once admitted, therefore, that the creditor may proceed and avail himself of his attachment, if the debtor does not succeed in obtaining his discharge, it must be admitted, also, or it will follow, if it is not admitted, that the attachment is a security upon property saved from the operation of the general assignment.

It may be added, that the subsequent part of the third section shows that the general " rights, titles, powers, and authorities to sell, manage and dispose of the" property, and rights of property of the bankrupt, and to sue for and defend the same, vested in the assignee, were such as were vested in, or might be exercised by, the bankrupt, before or at the time of his bankruptcy. The second section gave the assignee power and authority, beyond what the bankrupt possessed, in relation to " payments, securities, conveyances, or transfers of property, agreements, made or given by any bankrupt, in contemplation of bankruptcy," &c. which were declared void, and a fraud upon the act; but it cannot be pretended that attachments *in invitum, bonâ fide* made before an act of bankruptcy, are within this clause. These considerations show that it may well be admitted, that the creditor may proceed with

his action, and avail himself of his attachment, whether the debtor is discharged or not; because the right, title and authority in and over the property, vested by the act in the assignee, is such only as the bankrupt had, and it is very clear that his right was subject to the right of the creditor, under the attachment, to have the property held, and, upon the rendition of the judgment, applied to the payment of the debt. What is such a right as this, which prevents the property from passing absolutely to the assignee, and authorize the creditor to hold it, but a security upon property, " call it a lien, if you please," valid by the laws of the State, and excepted from the operation of the act, not only by force of the proviso of the second section, but by the terms of the third ?

Having carefully examined the opinion in *Ex parte Bellows & Peck*, we find nothing in it which addresses itself to our judgment as a fair argument against the opinions expressed by us in *Kittredge* vs. *Warren;* and we therefore adhere to the decision in that case, with as undoubting confidence as we can hold to any thing else similarly situated. And the belief that that case commends itself very generally to the approbation of the profession in this State, and also to that of gentlemen of eminent professional standing elsewhere, certainly adds, in no small degree, to the confidence we have in its correctness. That decision is subject to the revision of the supreme court of the United States. If there reversed, we shall be bound to treat it as erroneous, whatever of support it may have received in other quarters. Until thus reversed, we shall regard it as sound, unless it is impugned by something beyond what we have yet seen.

The opinion thus expressed settles the judgment which is to be entered in this case, and we should have been well content if we might have stopped here. But there is a farther matter in the opinion in the *case of Bellows & Peck*, of a character which may well astonish, if it does not alarm us, and which we cannot pass by in silence upon the present occasion.

According to that opinion, the judgment which is to be entered in this case is to be treated as a nullity in the district court of the United States for this district, if the defendant, or his assignee,

sees fit to apply there ; and that court, by means of injunction and summary process, may not only restrain the parties, and the officers of the law, from executing the final process of the courts here, issued according to the laws of the State, in cases in which those courts have a clear and undisputed jurisdiction over the cause and the parties, but may, also, by some summary process, search the pockets of attorneys and creditors, and take from them, what, under the administration of justice in this State, and in pursuance of the judgments of its courts, has been paid over to them as their property.

That we may not be supposed to have mistaken the import of the language used, we subjoin some farther extracts from that opinion.

" When," (says the learned judge,) " a personal action is pending at the suit of any creditor, in a State court in which an attachment has been made on the writ, and the period has not passed at which the bankrupt is properly in court, and is entitled, if he obtains a discharge in bankruptcy, to plead it as a bar of the suit, in the nature of a plea *puis darrein continuance*, it becomes the duty of the court, upon his own application, or that of his assignee, by petition, to grant an injunction against the creditor, to stay farther proceedings in the suit until the farther order of the court." 7 *Law Reporter* 129. Again : " If the bankrupt obtains his discharge, and pleads it as a bar, and the creditor means to contest its validity, as by replying fraud, or that the debt is not otherwise within the discharge, then the creditor should apply to the district court for leave to proceed in the cause, and to try the validity of the discharge by a trial in the State court, which is granted as a matter of course, upon suitable proof and affidavits. If the validity of the bar is established by the verdict of the jury, that of course ends the right to proceed in the suit unless a new trial is granted. If the discharge is avoided for fraud, or other matter *in pais*, then of course it is no bar, and there is an end of the defence, unless a new trial is granted. But, if the validity of the discharge, as such, is not contested, and the State court should, as in the case of *Kittredge* vs. *Warren*, upon a demurrer, hold the discharge invalid as to the property attached, I have no doubt

that it would be the duty of the district court to grant an injunction against the creditor, his agents, attorneys, and the sheriff holding the attached property, to restrain the creditor from proceeding to judgment; or, if he has proceeded to judgment and execution, to restrain the sheriff from levying on the property on the execution; and if the property has been sold by the sheriff, to compel him to bring the proceeds into court. And it will be no excuse or justification to the sheriff, after notice, that he has paid over the proceeds to the creditor, or his agents or attorneys. And the proceeds may be followed by the proper district court into the hands of the creditor and his agents and attorneys, wherever he or they may reside. Such, I do not scruple to affirm, is and should be, the practice." *Ditto* 130. Again : " I understand, indeed, that already an injunction has gone against the plaintiffs in the various suits in the State court referred to in the petition. But as it is neither suggested nor stated upon the case adjourned into this court, no notice of it can be here judicially taken. But this much I may say, that if such an injunction has been awarded, it is not competent for the creditors to take a single step in their suits in the State court, unless under the direction and order of the district court ; for otherwise it would be a breach of the injunction." *Ditto* 131. [*Sed vide* 5 *Law Reporter* 73.] And again : " In case the State court, not contesting, but admitting, that the discharge of the bankrupts was obtained *bonâ fide* and without fraud, and as such is valid as a discharge from the debts provable under the bankruptcy, should nevertheless proceed to award judgment for the plaintiffs in the said suits for their debts so provable, on account of such attachments therein, then that such judgments ought to be treated as a nullity by the district court, and as not binding therein. And that therefore it will become the duty of the district court, upon the petition and application of the assignee of the bankrupts therefor, to direct an injunction to the plaintiffs in such suits respectively, (if such injunction has not already issued,) prohibiting them respectively from levying any executions on the said judgments, or any of them, upon the property attached in said suits ; and at the same time to direct an injunction to the petitioners, prohibiting

Kittredge *v.* Emerson.

them or either of them from proceeding to levy the same executions on the property so attached, or any part thereof, but to deliver up the same forthwith to the assignee of the said bankrupts, to be distributed as a part of the assets of the said bankrupts. And if any of the said executions shall have been by them levied upon the said property attached, then to pay the moneys raised thereby into the said district court." *Ditto* 132.

That conclusions of a character so novel, and of such vital consequence to the State jurisdictions, should be put forth without a statement of some, at least, of the reasons upon which they are founded, was hardly to be expected. But the reasons are not to be found, unless, perchance, they are contained in the following clause of the same opinion.—" It would be an utter renunciation," (it is said,) " of the rightful authority and jurisdiction of the courts of the United States, to allow any creditor to avail himself of any unjust and unlawful advantage, merely because his suit is depending in a State court. The laws of the United States are, to the extent of the constitutional limits, paramount to the authority of those of the States. The courts of the United States are the appropriate expounders of the laws of the United States; and are not bound to follow the exposition of these laws by the State courts, unless so far as they approve themselves to their own judgment." *Ditto* 130.

If this is to be regarded as the premises and reasons from which the conclusions are derived, and we are to understand that, therefore, the district court should treat the judgments of the State courts as nullities, and attempt the exercise of the powers which it is said it is its duty to exercise, we must say that in our opinion the foundation will by no means sustain the superstructure. But, whatever may be the ground upon which the doctrine is promulgated, the plaintiffs in this and other actions similarly situated, with this matter before them, may well ask of us, whether the judgments entered in their favor, in pursuance of our opinions, are mere waste paper; and whether we have no power to enforce our own judgments, so long as they remain unreversed.

If the right existed to treat the judgments of this court as nullities, because there was some error in our construction of the

bankrupt act, there could be, as it seems to us, little excuse for the exercise of that right, by way of summary process, in any case of doubtful construction; and still less in a case where the construction adopted by this court is the same with that upon which the courts of the United States in the adjoining circuit, have, and do still, administer their jurisdiction under that act. That a judgment of a State court, rendered upon one side of the Connecticut river, should be held as a nullity, under the operation of a law of the United States, when a like judgment, rendered on the other side of that river, founded on a similar state of facts and of law, is held valid and binding, would, certainly, not only present an astonishing exposition of the law, but, also, a singular exhibition of judicial courtesy, if there is any liberty for the exercise of a discretion in this matter; and we think that those who hold to the conclusions put forth in *Ex parte Bellows & Peck* will look in vain for anything in the act, or in the nature of the case, imposing such a course of proceeding upon them, as an imperative duty. The course is clearly open, by which, in the regular mode of a writ of error, the question, which of two conflicting constructions is correct, may be readily determined. It may be said, however, that matter of this character addresses itself to the consideration of others, rather than of ourselves. We have certainly no desire to press it, because we prefer to consider this doctrine upon other grounds.

The assumption is, that the district court ought to treat the judgments of the courts of this State as nullities, not as it may be found that those courts had jurisdiction, or otherwise; but according as the district judge, acting under the light of *Ex parte Foster* and *Bellows & Peck*, may be of opinion that the courts rendering them have, or have not, exercised their jurisdiction wisely, on the pleadings before them. This is a new species of nullification.

It is evident, from what has been already stated respecting the decisions elsewhere, that the result of this doctrine, if carried into practice, would be that a judgment of a court here, having jurisdiction of the matter, if carried into Vermont as a justification for acts done under it, would be held by the United States courts

there, as well as the courts of that State, to be valid, and binding, and conclusive evidence; and not only so, but one founded in a correct exercise of judicial power, and a sound exposition of the bankrupt act; while within the limits of this State, where it was rendered, other United States courts would regard it as entirely void, a mere nullity. And this result would be attained under the operation and administration of a law, which, in order to be itself constitutional, must be a uniform law throughout the United States. The result need only be stated, to give a character to the doctrine.

This pretension, thus put forth, (so far as we are aware, for the first time,) that the circuit or district courts of the United States may treat the judgments of the courts of the several States as nullities, whenever in their opinion those judgments are founded upon, or involve, an erroneous construction of a law of the United States, it is believed has nothing, either of principle or authority, to sustain it.

In all the suits which have come under our notice, the court where these actions are pending, had, on the institution of the suit, jurisdiction of the cause and of the parties. The actions were duly commenced and entered, and the jurisdiction was most unquestionable. It has not been lost by any subsequent change in the relation or condition of the parties. 2 *Brockenbrough's R.* 516, *The United States* vs. *Meyers;* 8 *Peters's R.* 3, *Dunn* vs. *Clark;* 1 *Fairf. R.* 291; 2 *Sumner's R.* 262, *Clark* vs. *Matthewson, and cases cited.* It is not lost because the defendants have filed a petition in bankruptcy, nor by reason of their having obtained a certificate. That certificate must be pleaded, and its validity may in some way be contested. Had the plaintiff in this case replied that the certificate was fraudulently obtained, no doubt seems to be expressed in *Ex parte Bellows & Peck*, that a judgment, entered upon a verdict finding such an issue in favor of the plaintiffs, would be valid and binding upon parties and privies.

If, instead of a replication that the certificate was inoperative by reason of fraud, the plaintiffs reply some other matter, avoiding as they say its operation as a bar of the action, that does not affect the jurisdiction of the court, which must thereupon proceed

to hear, or try, and to render such judgment as it may deem legal and just upon the premises. If that judgment is founded upon an erroneous view of the matter in controversy, it stands as the judgment of a court of competent jurisdiction, and is equally binding upon parties and privies, until regularly reversed, as one rendered upon any other replication in avoidance of a plea. 11 *N. H. Rep.* 198, *Smith* vs. *Knowlton ;* 1 *Paine's C. C. R.* 58, *Fisher* vs. *Harnden ;* 1 *Peters's C. C. R.* 79, *Green* vs. *Sarmiento ; Ditto* 155, *Field* vs. *Gibbs ;* 9 *Mass. R.* 462, *Bissell* vs. *Briggs ;* 17 *Mass. R.* 445, *Commonwealth* vs. *Green ;* 6 *Pick. R.* 241, *Hall* vs. *Williams ;* 1 *Fairf. R.* 278, *Hall* vs. *Williams ;* 2 *Fairf.* 89, *Adams* vs. *Rowe ;* 2 *Shep. R.* 73, 78, *Bannister* vs. *Higginson ;* 2 *Verm. R.* 263, 268, *Hoxie* vs. *Wright ;* 3 *Verm. R.* 114, 119, *Walbridge* vs. *Hall ;* 6 *Verm. R.* 509, 511, *Kellogg, Ex parte ;* 11 *Verm. R.* 643, 648, *Gilman* vs. *Thompson ;* 1 *Conn. R.* 449, *Slocumb* vs. *Wheeler ;* 19 *Johns. R.* 162, *Andrews* vs. *Montgomery ;* 5 *Wend. R.* 148, *Starbuck* vs. *Murray ;* 6 *Wend.* 447, *Shumway* vs. *Stillman ;* 1 *Kent's Com.* 260 ; 3 *Cowen's Phil. Ev.* 897, *and cases cited ; Story's Confl. of Laws* 463, *and note.*

Such is the general principle to be found in the books. And by no court has this principle been more emphatically laid down, than by the supreme court of the United States.

" Where a court has jurisdiction, it has a right to decide every question which occurs in the cause ; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void ; and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no justification ; and all persons concerned in executing such judgments or sentences, are considered in law as trespassers." 1 *Peters's R.* 340, *Elliot* vs. *Piersol.*

" The general and well settled rule of law in such cases is, that when the proceedings are collaterally drawn in question, and it appears upon the face of them that the subject matter was within the jurisdiction of the court, they are voidable only. The

errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court to set them aside, or in an appellate court. If there is a total want of jurisdiction, the proceedings are void and a mere nullity, and confer no right, and afford no justification, and may be rejected when collaterally drawn in question." 2 *Peters's R.* 163, *Thompson* vs. *Tolmie.*

" A judgment or execution, irreversible by a superior court, cannot be declared a nullity by any authority of law, if it has been rendered by a court of competent jurisdiction of the parties and the subject matter, with authority to use the process it has issued : it must remain the only test of the respective rights of the parties to it. If the validity of a sale under its process can be questioned for any irregularity preceding the judgment, the court which assumes such power places itself in the position of that which rendered it, and deprives it of all power of regulating its own practice or modes of proceeding in the progress of a cause to judgment. If after its rendition it is declared void for any matter which can be assigned for error only on a writ of error or appeal, then such court not only usurps the jurisdiction of an appellate court, but collaterally nullifies what such court is prohibited by express statute law from even reversing." 10 *Peters's R.* 474, *Voorhies* vs. *The Bank of the U. States.*

" It remains only then to inquire in every case what is the effect of a judgment in the State where it is rendered. In the present case the defendant had full notice of the suit ; for he was arrested and gave bail, and it is beyond all doubt that the judgment of the supreme court of New-York was conclusive upon the parties in that State. It must, therefore, be conclusive here also." 7 *Cranch R.* 484, *Mills* vs. *Duryee. See,* also, 4 *Cranch* 241, 269, *Rose* vs. *Himely ;* 5 *Cranch* 173, *Kempe's Lessee* vs. *Kennedy ;* 3 *Wheat. R.* 285, *Hampton* vs. *McConnel ;* 6 *Wheat.* 113, *Hopkins* vs. *Lee ;* 10 *Wheat.* 199, *McCormick* vs. *Sullivant ;* 6 *Peters's R.* 729, *United States* vs. *Arredondo ;* 16 *Peters's R.* 87, *Cocke* vs. *Halsey.*

There is nothing that we discover, to take the cases now pending in the courts of this State out of the general principle. If

the judgments are binding upon the bankrupts, they cannot be treated as nullities by the assignee in bankruptcy. He must claim under the bankrupts, by a transfer subsequent to the attachment. He may in all such cases, by virtue of the provision of the bankrupt law, come in, as a party to the suit. He can, therefore, in no wise be regarded as a stranger to the judgment which may be rendered. He can avail himself of any judgment which shall be rendered against the plaintiff. Even if he could be regarded as a stranger, that would not make the judgments nullities. It would only show, that in some proper proceeding he might aver that the judgments were not binding upon him.

Nor will it do to say that the judgments, if rendered in favor of the plaintiffs, are frauds upon the bankrupt act, and therefore void. The doctrine of fraud, in the avoidance of judicial proceedings, does not extend quite so far. To warrant that, there must be, not mistake of the court, but covin, collusion, or falsity of the party. *The Duchess of Kingston's Case,* 11 *State Trials* 198, cited *Hale's Hist. Com. Law* 31, 38, *note D* ; 6 *Peters's R.* 716, *United States* vs. *Arredondo* ; 12 *Vermont R.* 619, 624, *Atkinsons* vs. *Allen.*

The considerations and authorities we have thus adverted to are quite sufficient to warrant us in saying, that we cannot recognize the right of any court to treat our judgments, rendered in cases where we have a clear jurisdiction, as mere nullities.

But the position that the judgments of courts having jurisdiction of the cause and the parties, may be treated as nullities, thereby precluding the necessity of what might prove an unsuccessful attempt to procure their reversal, is not, as we have seen, the only extraordinary conclusion found in the case of *Bellows & Peck.*

It is not directly asserted, but it may perhaps be inferred from what we have before quoted, that the district court, in fear lest the State courts should go wrong in the matter, may, through the means of an injunction already granted upon the plaintiffs, restrain the State courts from considering any replication, but such as the district court may deem suitable and proper for their judgment. Notwithstanding the defendant has obtained his dis-

charge, and comes in and pleads it, the plaintiff it seems is not to be at liberty to reply to the plea, except by permission of the district court. It does not distinctly appear, whether, if the plaintiff proposes to file a replication setting forth an attachment, leave will be refused to him to proceed farther in the cause; but such a course seems to be shadowed forth in the extracts we have made.

Subsequently to the time when the bankrupt act went into operation, it necessarily came to our knowledge that injunctions were, from time to time, issued by the district court, for the purpose of restraining plaintiffs from proceeding in actions pending in the State courts, the defendants having filed petitions in bankruptcy; and we were fully aware that the jurisdiction thus exercised was particularly odious to the parties, and counsel, upon whom such process was served. No small impatience was manifested upon the subject; but no matter was presented to this court, or to any of the several members of it, for any action, relative to such process.

When *Kittredge* vs. *Warren* was decided, we made no examination into this subject. It was in no way necessary, or important, to the settlement of that case. We were content to take it for granted, that there might be some foundation for a power which had been so freely exercised. We admitted, in that case, that if doubts existed respecting the validity of the demand upon which a suit had been commenced, and an attachment made, it might be proper, if the defendant had gone into bankruptcy, to restrain the prosecution of the suit until provision could be made for defending it; and we made no inquiry whether the authority to issue such an injunction resided in the courts of the United States, or was confined to those of the State.

We have no controversy with the learned judge of the district court, for what has passed in this respect. In issuing the injunctions, thus far, he has undoubtedly acted on what seemed to him to be a sufficient opinion upon that subject.

But the pretension now set up, in *Ex parte Bellows & Peck*, is of a much more important character. It is, as we have already seen, no less than an assertion of a right and power in the

---
Kittredge *v.* Emerson.
---

district court to enjoin parties from proceeding to final judgment in the courts of the State, in cases where, in our opinion, they are entitled to judgments on the record before us; to restrain the execution of our final process, in the hands of the sheriff; to require him to account in the district court, instead of returning his process to the court from which it issued; or if, perchance, the proceeds of a sale on execution have passed from his hand, to follow them, like goods taken tortiously, wherever they may be found.

Such, the learned judge, in *Bellows & Peck* "does not scruple to affirm, *is*, and should be the practice."

We can only say that this is the first time we have ever heard of any such practice, and we trust, with great confidence, that it will be the last.

The power thus asserted is one of tremendous import, and the authority for its exercise should be most clear and indisputable. We cannot consent that this claim to interfere with the jurisdiction, legal proceedings, laws, and practice, of the several States should pass unchallenged, and we propose to inquire at this time somewhat into its foundation.

The general question, of the right of the district court to issue an injunction to stay proceedings in a State court in any case, is disposed of, in a very summary manner, in the *case of Bellows & Peck.* "In respect" (it is said,) "to the right of the district court to issue such an injunction, it seems to me clear in principle, and it is a question of which that court had exclusive cognizance, and it is not a matter inquirable into elsewhere, whether the jurisdiction was rightfully exercised or not." 7 *Law Reporter* 124.

If, by this, it is intended that there is no appeal from the decision of the district court in this matter, it is undoubtedly correct; but if it is intended that the courts of the States cannot inquire into the jurisdiction of the district court to issue such injunctions, and, if it be found that no such right exists, act upon the result of that inquiry, the assertion is most respectfully, but distinctly denied. That the jurisdiction may be inquired into is too clear to admit of doubt. 1 *Peters's Sup. C. R.* 340; 2

*Peters* 163 ; 4 *Cranch* 241, 268 ; 1 *Conn. R.* 427, 441–457 ; 9 *Mass. R.* 462 ; 17 *Mass. R.* 545 ; 6 *Pick.* 241, 247 ; 3 *Verm. R.* 119 ; 11 *Ditto* 647 ; 13 *Ditto* 182, *Stoughton* vs. *Mott ;* 1 *Johns. R.* 471, 484, *Wheelwright* vs. *Depeyster ;* 15 *Johns. R.* 121, *Borden* vs. *Fitch ;* 5 *Paige's Ch. R.* 299, 305, *Bates* vs. *Delavan ;* 3 *Binney's R.* 220, 250, *Cheriot* vs. *Foussat ;* 1 *Kent's Com.* 410 ; *Story's Confl. of Laws* 509, 461, *note.*

When it is settled that the district court has jurisdiction to issue injunctions, to restrain proceedings in the State courts, its decree, in that particular, must be held conclusive, if it does not exceed the limits of the jurisdiction.  3 *Wheat. R.* 312, *Gelston* vs. *Hoyt.*

Provision for the exercise of the judicial power conferred by the constitution of the United States, was made in the act of congress of September 24, 1789, to establish the judicial courts of the United States, usually termed the judiciary act.

The 25th section provides, that in certain cases, there enumerated, the final judgment or decree in any suit, in the highest court of law or equity of a State in which a decision of the suit could be had, may be reëxamined, and reversed, or affirmed, in the supreme court of the United States, upon a writ of error ; (1 *Laws U. S., Story's Edition,* 61,) and we admit that our judgments, involving the construction of the bankrupt law, in its operation upon attachments, are within the provisions of this section.

The 14th section of the act confers upon the supreme, circuit and district courts, power " to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. And that either of the justices of the supreme court, as well as the judges of the district courts, shall have power to grant writs of *habeas corpus,* for the purpose of an inquiry into the cause of commitment.—*Provided,* that writs of *habeas corpus* shall, in no case, extend to prisoners in gaol, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify."   *Ditto* 59.

But congress did not deem it necessary, to the exercise of any rightful jurisdiction of the circuit or district courts, that they should have any authority to issue injunctions to stay proceedings in the State courts. The 5th section of an act passed March 2, 1793, in addition to the act of 1789, enacts, " That writs of *ne. exeat*, and of injunction, may be granted by any judge of the supreme court, in cases where they might be granted by the supreme or a circuit court; but no writ of *ne exeat* shall be granted unless a suit in equity be commenced, and satisfactory proof shall be made to the court or judge granting the same, that the defendant designs quickly to depart from the United States; nor shall a writ of injunction be granted to stay proceedings in any court of a State; nor shall such writ be granted in any case, without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving for the same." *Ditto* 311.

An act of February 13th, 1807, to extend the power of granting writs of injunction to the judges of the district courts, enacted, " That, from and after the passing of this act, the judges of the district courts of the United States shall have as full power to grant writs of injunctions, to operate within their respective districts, in all cases which may come before the circuit courts within their respective districts, as is now exercised by any of the judges of the supreme court of the United States, under the same rules, regulations, and restrictions, as are prescribed by the several acts of congress establishing the judiciary of the United States, any law to the contrary notwithstanding: *Provided*, That the same shall not, unless so ordered by the circuit court, continue longer than to the circuit court next ensuing; nor shall an injunction be issued by a district judge in any case where a party has had a reasonable time to apply to the circuit court for the writ." 2 *U. S. Laws, Story's Edition*, 1043.

The district courts are specially authorized to issue injunctions in certain cases relating to the administration of the treasury department.

These seem to have been all the provisions which congress had seen fit to enact upon this subject previous to the passage of the bankrupt law.

Kittredge *v.* Emerson.

That eminent jurist, Mr. Chancellor *Kent*, speaking of the supreme court of the United States, says, " This court, and each of its judges, have power to grant writs of *ne exeat* and of injunction ; but the former writ cannot be granted unless a suit in equity be commenced, and satisfactory proof be made that the party designs quickly to leave the United States ; and no injunction can be granted to stay proceedings in a State court, nor in any case without reasonable notice to the adverse party." 1 *Kent's Com.* 300.

Upon a subsequent page he says, " It has also been adjudged, that no State court has authority or jurisdiction to enjoin a judgment of the circuit court of the United States, or to stay proceedings under it. This was attempted by a State court in Kentucky, and declared to be of no validity by the supreme court of the United States, in *McKim* vs. *Voorhies*. No State tribunal can interfere with seizures of property made by revenue officers, under the laws of the United States ; or interrupt, by process of replevin, injunction, or otherwise, the exercise of the authority of the federal officers ; and any intervention of State authority for that purpose is unlawful. This was so declared by the supreme court in *Slocum* vs. *Mayberry*, (2 *Wheaton* 1.) But if there be no jurisdiction in the instance in which it is asserted, as if a marshal of the United States, under an execution in favor of the United States against A, should seize the person or property of B, then the State courts have jurisdiction to protect the person and the property so illegally invaded ; and it is to be observed, that the jurisdiction of the State courts in Rhode-Island was admitted by the supreme court of the United States, in *Slocum* vs. *Mayberry*, upon that very ground." 1 *Kent's Com.* 410.

" But," he says farther, " while all interference on the part of the State authorities with the exercise of the lawful powers of the national government, has been, in most cases, denied, there is one case in which any control by the federal over the State courts, other than by means of the established appellate jurisdiction, has equally been prevented. In *Diggs & Keith* vs. *Wolcott*, " (4 *Cranch* 179,) " it was decided generally, that a court of the United States could not enjoin proceedings in a State court ; and

a decree of the circuit court of the United States for the district of Connecticut was reversed, because it had enjoined the parties from proceeding at law in a State court. So in *Ex parte Cabrera,*" (1 *Wash. Cir. R.* 232,) " it was declared, that the circuit courts of the United States could not interfere with the jurisdiction of the courts of a State. These decisions are not to be contested; and yet the district judge of the northern district of New-York, in the spring of 1823, in the case of *Lansing and Thayer* vs. *The North River Steamboat Company,* enjoined the defendants from seeking in the State courts, under the acts of the State legislature, the remedies which those acts gave them. This would appear to have been an assumption of the power of control over the jurisdiction of the State courts, in hostility to the doctrine of the supreme court of the United States. In the case of *Kennedy* vs. *Earl of Casillis,* an injunction had been unwarily granted in the English court of chancery, to restrain a party from proceeding in a suit in the court of sessions in Scotland, where the parties were domiciled. It was admitted, that the court of sessions was a court of competent jurisdiction, and an independent foreign tribunal, though subject to an appeal, like the court of chancery to the house of lords. If the court of chancery could in that way restrain proceedings in the court of sessions, the sessions might equally enjoin proceedings in chancery, and thus stop all proceedings in either court. Lord Eldon said, he never meant to go farther with the injunction, than the property in England ; and he, on motion, dissolved it *in toto.*" *Ibid.* 411, 12. In a note to the remarks upon the case in New-York, he states that the assumed jurisdiction was not afterwards sustained.

The case *Diggs & Keith* vs. *Wolcott,* 4 *Cranch's R.* 179, referred to in the foregoing extract, was this. Diggs & Keith commenced a suit in a county court in Connecticut, against Wolcott, on two notes. Wolcott filed a bill in chancery, in the superior court of the State, against them, praying that they might be compelled to give up the notes, and be perpetually enjoined from proceeding at law. This suit was removed by them into the circuit court of the United States, where it was decreed that they should deliver up the notes, and be enjoined, &c. The supreme

court of the United States, " being of opinion that a circuit court of the United States had not jurisdiction to enjoin proceedings in a State court, reversed the decree."

In *Ex parte Cabrera*, it was held, that " the jurisdiction of the courts of the United States is limited, and the inferior courts can exercise it only in cases in which it is conferred by an act of Congress." And that " the circuit court cannot quash proceedings against a public minister, depending in a State court : nor can the court in any way interfere with the jurisdiction of the courts of a State." 1 *Wash. C. C. R.* 232. " It is one thing," (says Mr. Justice *Washington*,) " to declare the process void ; but another to define the tribunal which is to decide. The natural tribunal is that where the process is depending, or which has the superintending control over such courts." " I apprehend that neither court," (federal circuit, or the State court,) " can dictate to the other the conduct it shall pursue, or interfere in causes there depending, unless properly brought before it, under the provisions of law." *Ditto* 236. " I am not one of those who think it a commendable quality in a judge to enlarge, by construction, the sphere of his jurisdiction ; that of the federal courts is of a limited nature, and cannot be extended beyond the grant." *Ditto* 237.

" Where N. R. commenced suits at law in the superior court of the city of New-York, against H. R., and H. R. filed a bill in chancery to obtain an injunction restraining the proceedings at law, it was held that the suit in chancery could not be removed into the circuit court of the United States, inasmuch as such a removal would leave H. R. without remedy ; the circuit court of the United States having no power to restrain the proceedings at law." 1 *Paige's R.* 183, *Rogers* vs. *Rogers*. Mr. Chancellor *Walworth* said, " In this case, the foundation of the suit is the inequitable prosecution of the suits at law against the complainants in the State court ; and the relief sought is a perpetual injunction to stay those proceedings. By the commencement of the suits at law, the State courts have gained jurisdiction over the subject matter thereof, and the courts of the United States have no jurisdiction to restrain the petitioners from proceeding

therein, or to decree a perpetual injunction, so as to prevent them from collecting the judgments which may be obtained in those suits.    The effect of a removal of this cause, therefore, would be to leave the complainants without remedy."    *Ditto* 184.

It appears, from this investigation, not only that the right to issue injunctions, restraining suits in the State courts, is not to be found, in express terms, in the general acts prescribing the course of judicial proceedings in the courts of the United States; but that, lest the general terms in which one clause of the judiciary act is expressed might be supposed to assert or confer such a power, the courts and judges of the United States are under prohibition, by general law, not to issue such process.

If the power exist, therefore, in the cases in which it has been exercised, and in which it is proposed to exert it still farther, it must be sought for in the provisions of the bankrupt act itself.

If congress, by the enactments of 1793, and 1807, have clearly restrained the judges of the courts of the United States from exercising such power, in general terms, to what provision of the bankrupt act are we to look for a repeal of those laws, or to a grant of the power so far as the administration of that jurisdiction is concerned?

On examining the bankrupt law, it is found to contain no provisions authorizing, in terms, the issuing of an injunction.    It provides that the jurisdiction shall be exercised summarily, in the nature of summary proceedings in equity; that the jurisdiction " shall extend to all cases and controversies in bankruptcy arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to all cases and controversies between such creditor or creditors and the assignee of the estate, whether in office or removed; to all cases and controversies between such assignee and the bankrupt, and to all acts, matters and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy.    And the said courts shall have full authority and jurisdiction to compel obedience to all orders and decrees passed by them in bankruptcy, by process of contempt and other remedial

Kittredge *v.* Emerson.

process, to the same extent the circuit courts may now do in any suit pending therein in equity."

It may be taken for granted, however, that the district courts were, by force of the act, authorized to issue such process as might be necessary to carry the act into effect, in the ordinary mode of exercising a jurisdiction of that character, so far as they were not restrained by some express enactment. This would be but an incident to the jurisdiction.

But the question arises, whether the passage of the law, conferring upon the district court jurisdiction in bankruptcy, operated of itself as a repeal of the clause of the act of 1807, by which the district judge, in issuing injunctions, is placed under the same rules, regulations and restrictions as the judges of the supreme court of the United States, and by which he is restrained generally from issuing injunctions to stay proceedings in the State courts. It is very clear, that the operation of that prohibition was not confined to cases where the jurisdiction of the district court existed before its passage. If, by a subsequent statute, the jurisdiction of that court was extended to some matter, beyond what before existed, that jurisdiction must be exercised, like the previous jurisdiction, and under the same limitations and restrictions, unless there was some express extension of the mode of action in relation to that particular jurisdiction, or unless some necessarily resulted from the nature of the case.

The bankrupt law is but a law of Congress, and containing no express repeal of the restriction of 1807, nor any express authority to interfere with the action of the State courts, the authority so to do, if any exists, must result from the nature of the proceedings, and the necessity of the case. It will hardly be disputed that such a necessity, in order to justify proceedings otherwise expressly prohibited, must be a clear, convincing, imperious necessity; and the right founded on it must be bounded, and limited, strictly, to the limits of the necessity.

The authority of congress to pass a bankrupt law is not denied. Nor shall we deny, that, having passed one, if it can only be carried into execution by writs of injunction, operating upon suits in the State courts, then the district courts have the power

to issue them, and the restriction is repealed, so far as is necessary to effect the purpose; but this can only be because this course is necessary. It is limited to the cases in which it is necessary, and it ceases when the necessity ceases. No considerations of convenience are admissible for a moment. A man has no way of necessity over the land of his neighbor, because it is a shorter course, and more convenient, than the highway the laws have provided for him.

Has there been a necessity for issuing process of this character? Could not the jurisdiction under the act have been exercised, like the other jurisdiction of those courts, without interference with proceedings in the State courts?

In *Ex parte Foster*, the learned judge says if he entertained any doubt of the right of the district court to issue injunctions, he " should not entertain any doubt as to the jurisdiction of the circuit court upon a bill, filed by the assignee, after his appointment, to overhaul and control or set aside all the proceedings" [in the State court,] " had in the intermediate time, by the attaching creditor, against the rights of the other creditors, and in subversion of the policy and objects of the bankrupt act." 5 *Law Reporter* 73. Surely, the right to issue an injunction cannot be maintained from the necessity of the case, if the circuit court might thus *overhaul, and control, or set aside,* the proceedings and judgments of the State courts. But the right to do this must probably seek its foundation in some necessity quite as stringent as that required to justify an injunction. It can hardly find a basis in the policy of the act.

· If the bankrupt act can be administered in Vermont, not only without any such proceedings, but with the full admission that the State courts have the right to render such judgments, and cause a sale of the property on the execution, it will be a most astonishing kind of necessity which shall drive the United States courts to attempt to impede the execution of final process here in similar cases.

But upon this branch of the subject, without entering into the inquiry what other mode might have been adopted, it is quite sufficient to say, that if the true construction of the bankrupt act is, that

an attachment is not a security saved from the operation of the act, but the third section transfers the property to the assignee subject to no incumbrance, we see no reason why he might not demand and recover it, forthwith, without regard to the farther prosecution of the suit. His right could not, in such case, be dependent upon the discharge, and the attachment must of necessity be dissolved. If this is so, it is very clear that there has not only been no necessity for injunctions upon creditors pursuing their remedy in the State courts, but that the practice of issuing them has been idle, or worse than idle.

And if the decree of bankruptcy does not vacate the attachment, then we say, farther, it is because the property passes to the assignee subject to the incumbrance of the attachment; it is a security upon property, saved to the creditor; and, admitting this, an injunction, restraining him from availing himself of his security, thus saved, is a most unwarrantable interference with his rights, from whatever court it may issue. The doctrine found in *Ex parte Foster*, that, assuming an attachment on mesne process to be a security within the saving of the proviso, the attaching creditor ought, notwithstanding, to be restrained from prosecuting his suit, because, if permitted to prosecute it, he would secure to himself what the act saved to him, and because, if restrained from proceeding until the debtor obtained his discharge, that discharge might then be used to deprive him of what the act saved to him, cannot stand for a moment in any court, unless it be one which finds a policy in the act, contrary to the admitted and declared will of the legislature which made the enactment. If the discharge, when obtained, could be used to defeat and destroy the security which the act saved, the wrong done to the creditor would only be the more aggravated. How the attempt of a creditor, even by a race of diligence, to secure to himself a right which the law of the State conferred upon him, and the bankrupt act saved to him, or a judgment obtained by such a race of diligence, could be treated as a fraud upon the act which saved the right, or be deemed an overreaching and defeating of the just rights of the other creditors, has certainly never yet been satisfactorily explained.

" There is no power," says Mr. Justice *Baldwin*, " the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction ; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protective preventing process of injunction : but that will not be awarded in doubtful cases, or new ones, not coming within well established principles ; for if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of a court, not of the party who prays for it. It will be refused till the court are satisfied that the case before them is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act ; in such a case, the court owes it to its suitors and its own principles, to administer the only remedy which the law allows to prevent the commission of such act." 1 *Baldwin's R.* 217, *Bonaparte* vs. *The Camden and Amboy Railroad Company.*

Waiving any farther consideration of the general question, whether any injunction could lawfully issue, and conceding, for the sake of the argument, that the district courts might, by virtue of their jurisdiction under the bankrupt act, and from the necessity of the case, restrain proceedings in the State courts, until the bankrupt could obtain and plead his discharge, there is no necessity for the exercise of such a power after that time, nor can it with any propriety be issued to restrain the execution of a judgment of the court of a State, which, if erroneous, may be corrected by a writ of error.

If there are rights of property dependent upon the termination of the suit, and in which the assignee has an interest in behalf of the creditors, he may, as we have seen, become a party to the suit, and after the certificate is obtained, vindicate all the rights of which he is guardian, by a regular proceeding, in due course of law, without a resort to any such summary interference. We see no reason to doubt that he may plead the discharge in

Kittredge *v.* Emerson.

the name of the bankrupt, should the latter refuse to do it himself, by virtue of the provision authorizing the assignee to become a party to the suit. It is so held in *Ex parte Foster*, 5 *Law R.* 72. And if he might do this, he could sustain a writ of error, if the decision on the plea should be erroneous.

On the supposition, then, that there has been a time when the courts of the United States had power to issue an injunction, from the necessity of the case, that necessity has ceased, and the power has ceased with it. The injunction has been issued, and has done its office. This is apparent from the fact that the discharge is brought in and pleaded. The defendant, by pleading to the merits, waives any farther benefit from the injunction to stay proceedings, unless the district court, by means of it, has taken him into its guardianship. Having put in his plea, he is entitled to require a replication. It cannot be necessary for the plaintiff to ask leave of the district court, or any other court, before he can answer the plea thus put in. When the defendant proceeds again with the cause, the plaintiff may do so as a matter of course.

There is no principle, or pretence of a principle, of which we are aware, on which we can admit the right of the circuit or district courts, in any manner, to interfere and stop the execution of the final process of the courts of this State. It is an assumption of power that cannot be tolerated for a single instant. Even if the judgments might be regarded as nullities, that is not an admissible remedy; but we do not rely on that. So long as our judgments stand unreversed, the plaintiffs will be entitled to receive the fruits of them, by an appropriation of the property attached, and held as a security.

If the attachment has been dissolved, the assignee has his remedy by a writ of error. After a plea of discharge in bankruptcy, a replication setting forth an attachment, and a special judgment to be satisfied by a levy upon the property attached, it is very questionable whether he has any other remedy; especially if he has actually become a party to the suit.

Upon the service of the writ by the attachment of the property, the sheriff became bound to hold it for the benefit of the plaintiffs, in case they should obtain judgment. The petition in

bankruptcy neither ended the suit, nor dissolved the attachment. Nor did the decree of bankruptcy, or the certificate of discharge, in our opinion, operate, *ipso facto*, to produce such a result. And this seems to be fully admitted in the opinion in the case of *Bellows & Peck*. The dissolution of the attachment is to be worked out only by the discharge of the debt, and the defeat of the action ; and that is to be defeated, if at all, not by injunctions from the district court, but by pleading the certificate. Such is believed to be the uniform course under the English bankrupt law.

If the certificate does not have that operation, then, the property being in the custody of the law, to await the termination of the suit, the sheriff is bound to apply it to the satisfaction of any judgment which may be rendered in favor of the plaintiff. If the judgment is erroneous, he may justify under it, against any one who is party, or privy, to it. 6 *Peters's R.* 16, *Bank of the United States* vs. *Bank of Washington*. Entertaining the opinions we do, we must hold him to this responsibility ; and while we hold him thus liable, we are bound to protect him in the possession of the property, and in the application of the avails of it, against any such summary process.

We have faith to believe that the learned judge of the district court will not assume such a control over our dockets, as farther to enjoin the plaintiffs, in actions pending here, from proceeding in such manner as the courts of the State may allow ; or such a control over final process here as to attempt to stop its execution.

If our opinions respecting his authority are correct, a resort to coercive measures, to enforce an injunction, or to punish a disregard of it, might possibly not be entirely safe, for those at least who should attempt to execute the order ; but this is a matter upon which we shall not enter.

Should our faith on this subject prove unfounded, our course is clear.

If this court is, in these cases, to be " taught what the United States is," it must be by the regular action of the supreme court of the Union, upon the judgments of the courts of the State, through the operation of a writ of error, which it is admitted well lies, and not through applications to the district or circuit court, in-

voking the exercise of powers which can have no foundation but a necessity of a very questionable character, at the best, for their exercise, and which are appealed to in cases where the necessity clearly does not exist.

In thus freely and distinctly expressing our opinions, we trust that we shall escape the imputation of any discourtesy towards the tribunals of the Union, for which, it need hardly be said, we entertain the highest respect. The occasion must furnish a justification, for the freedom it has required. We cannot forbear to express our convictions upon these matters, however deeply we may regret the difference of opinion which they indicate. We cannot be expected to yield a great principle, regarding the faith, credit and effect due to the judgments of the courts of the several States, to any feelings of judicial courtesy, however strong. We are not at liberty, and we may say without offence, that we have no desire, to lay the rights, and powers, and duties of the judiciary of this State at the feet of the tribunals of this district and circuit, however great may be our respect for the incumbents. We have quite as little discretion in this respect, as the circuit court has to refuse jurisdiction, in a case where it has concurrent jurisdiction with a State court, and a suit upon the subject matter is already pending in the latter. *See* 3 *Sumner's R.* 165, *Wadleigh* vs. *Veazie.*

We disclaim any assumption of power to interfere with any rightful exercise of jurisdiction by the courts of the United States. But we as distinctly claim the right to take such measures as may be necessary to vindicate our own jurisdiction; and to execute our own process, in cases where we have jurisdiction, so long as our judgments stand unreversed. We sincerely deprecate all collision with those tribunals; and to prevent misapprehension, and guard, as far as may be in our power, against any danger of interference, we take occasion to say in conclusion, that if the plaintiffs in this, and other cases similarly situated, shall ask the interference of this court, it will be our duty to enjoin and prohibit the bankrupt, and his assignee, the creditors, and all claimants of the property attached, from attempting to procure any process, from any court which is not acting under the authority

of this State, with a view to prevent the entry of judgments in such suits, or to prevent the execution of the final process issued upon the judgments when obtained ; and from applying for, or attempting to execute any summary process, order, or decree of any court, with the view and purpose of taking from the creditors, or their attorneys, the fruits of such judgments as they may obtain, on account of any supposed want of right in the court to render those judgments, or any supposed invalidity of such judgments, so long as they shall remain in full force and unreversed. And it will farther be our duty, on application, to enjoin and prohibit all persons from making any application, or instituting any proceedings, founded on any supposed breach of an injunction, order, or decree, issued by any tribunal not acting under the authority of this State, by reason of any proceedings in the courts of this State, arising after the bankrupt has pleaded his discharge. And if any such injunction shall be issued by us in any case, it will be our duty to punish any infraction of it when brought to our notice, by prompt action, and by all the modes in which such orders are usually enforced.

We shall certainly regard our own judgments, rendered in cases in which we have a clear jurisdiction over the cause and the parties, as valid, and binding, until they are regularly reversed or annulled by some competent authority ; and we shall execute those judgments, and protect the officers of the State in their execution, by all the means which the State has placed in our hands for that purpose.

*Judgment for the plaintiff.*

See 7 *Howard's S. C. R.* 612, *Peck & a.* vs. *Jenness, in error.*